UNITED STATES DISTRICT COURT

                                   SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY LUTZ,<br><br>    Plaintiff,<br>vs.<br><br>CBRE GROUP, INC., a Delaware corporation, LOWE SD CALIFORNIA PROPERTY, LLC, a New York limited liability company; ABM SECURITY SERVICES, INC.; MICHELLE ROUSSELLE, an individual; CITY OF SAN DIEGO; San Diego Police Chief WILLIAM LANSDOWNE; Assistant Chief BOYD LONG; Officer TONY LESSA; and DOES 4 - 260, Inclusive.<br><br>    Defendants. | Case No.: 3:12-CV-2625-JM (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CBRE'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

    On October 30, 2012, Plaintiff Ray Lutz filed a complaint against CBRE Group, Inc. ("CBRE"), Lowe SD California Property, LLC, ABM Security Services, Inc. ("ABM"), Michelle Rousselle, the City of San Diego (the "City"), the City's Police Chief William Lansdowne, the City's Assistant Chief Boyd Long, and Officer Tony Lessa (collectively, "Defendants"). Lutz later filed for

leave to file an amended complaint ("FAC"), which he did on January 22, 2013. On February 4, 2013, CBRE filed a motion to dismiss Lutz's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim, which this court granted. On April 30, 2013, Lutz filed a second amended complaint ("SAC"), which CBRE again moved to dismiss on May 14, 2013. Lutz filed an opposition on June 24, 2013. This matter, which was scheduled for hearing on July 7, 2013, was taking under submission on July 1. For the following reasons, the court grants in part and denies in part CBRE's motion to dismiss the claims against it without leave to amend.

I. BACKGROUND

In the two months immediately prior to this action, a movement known as "Occupy San Diego" sought to raise awareness about the inequities of American society. SAC ¶ 25. As various state and local government agencies are located around Civic Center Plaza, Occupy San Diego frequently protested there in September and October 2011. Id. ¶ 25. On October 28, 2011, San Diego Police Department ("SDPD") officers raided Occupy San Diego's protest in Civic Center Plaza and arrested 51 individuals. Id. ¶ 26. Many witnesses to the raid claimed that the SDPD officers and San Diego sheriff's deputies used excessive force against individuals who had broken no laws and were not resisting arrest. They further claimed that the individuals were arrested without probable cause. Id. ¶ 28. Following this initial raid, the Occupy San Diego protests returned only to be raided again by SDPD officers. Id. ¶ 29.

On November 28, 2011, Lutz hand-delivered a letter and a copy of Robins v. Pruneyard Shopping Center, 23 Cal. 3d 899, 910 (1979) (holding that California's constitution protected free speech and petitioning, reasonably

exercised, in privately owned shopping centers), to Cyndi Poes, Real Estate Manager for the Civic Center Plaza office building and a CBRE employee. Id. ¶ 33. Lutz's letter indicated that he planned to register voters in Civic Center Plaza pursuant to his legal right to do so as outlined in the Pruneyard case.

The next day, Lutz returned at around noon and began to "set up a small, unobtrusive table in Civic Center Plaza adjacent to the stairs that lead from the bottom area of the plaza to the large raised area on which the Civic Center office building is located." Id. ¶ 36. The table was approximately 100 feet away from the Civic Center Plaza office building's entrance. Id.

As Lutz was setting up his table to register voters, several City police officers surrounded him. Id. ¶ 37. Lutz explained that the SDPD and the City were upset over the presence of Occupy San Diego protesters in Civic Center Plaza in the weeks prior. Lutz, who had previously been present in Civic Center Plaza when Occupy San Diego was protesting, believes that the Defendants associated him with Occupy San Diego. Id. ¶ 38.

Officer Lessa advised Lutz that he could not set up his table in that location. Id. ¶ 39. Lutz responded that he had a legal right to be present to register voters and handed Officer Lessa a copy of the Pruneyard case. Id. ¶ 39. Lutz further informed Officer Lessa that he had delivered a letter and copy of the Pruneyard case explaining this right to Poes the previous day. Id. ¶ 40. Officer Lessa responded that he did not believe that Lutz had delivered the aforementioned letter and then went inside the Civic Center Plaza office building. Id. ¶ 40.

When Officer Lessa returned, he was accompanied by a woman named Michelle Rousselle, an ABM employee who claimed to be the manager at the Civic Center Plaza office building, and a still-unidentified male referred to in the

SAC as "Doe 10."  Id. ¶ 42.  ABM allegedly provided security on behalf of CBRE.  Lutz had already registered several voters and three people were waiting in line to register.  Id. ¶ 43.  Rousselle asked Lutz to move his table six feet south of his current location into a public area of Civic Center Plaza.  Id. ¶ 44.

Lutz did not want to move his table because he "knew" officers were arresting individuals who set up tables in the suggested location and he did not want to be arrested.  Id. ¶ 44.  He was also only planning on staying for one hour and had parked in a one-hour spot nearby.  Id. ¶ 46.  Knowing that he had a legal right to be present, Lutz refused to move.  Id. ¶ 47.  Lutz also asked why his table could not be there, and Officer Lessa only replied that they didn't want tables in that area.  Id. ¶ 50.  Officer Lessa provided him with no legal authority.  Id.

After refusing to move, Lutz was arrested.  Id. ¶ 52.  When concerned bystanders inquired why Lessa was being arrested, SDPD officers replied, "trespassing."  Id.  On information and belief, Lutz alleges that Rousselle or Doe 10 had initiated a citizen's arrest by reporting Plaintiff's alleged offense to Officer Lessa and other SDPD officers and requested that they arrest him.  Id. ¶ 53.  Rousselle and/or Doe 10 also allegedly executed a document with the SDPD attesting to the fact that they had conducted a "citizen's arrest" of Lutz.  Id.

Lutz was placed in handcuffs, which were applied too tightly, although he requested that SDPD officers, including Officer Lessa, loosen his handcuffs.  Id. ¶ 56.  These constrictive handcuffs allegedly caused Lutz to suffer wrist pain for weeks after his arrest.  Id. ¶ 65.

Lutz was also forced to remain in a police vehicle for an excessive time, where he allegedly became fearful for his safety due to the violent behavior of an unidentified male arrestee in the police vehicle next to him.  Id. ¶ 58.  Once he

was finally driven to the Central Jail, he was left in the police vehicle for approximately one hour. Id. ¶ 59.

He was later placed in a holding cell at Central Jail where he remained until approximately midnight on November 20, 2012, about 11 hours after his arrest. Id. ¶ 64. Lutz claims physical and emotional injuries as well as damage to his reputation. Id. ¶ 71.

Lutz alleges that CBRE is the actual agent of Lowe, who owns the Civic Center Plaza building and employs CBRE to manage it. Id. ¶ 74. Lutz further alleges that either CBRE or Lowe hired ABM to perform security services for the Civic Center Plaza building and is therefore an agent of either CBRE or Lowe. Id. ¶¶ 75, 76. Lutz alleges that Rousselle, as an ABM employee, is thereby an agent for ABM, CBRE, and Lowe. Id. ¶ 77.

In addition, Lutz alleges that the City, Officer Lessa, and Doe defendant SDPD officers who arrested, handcuffed, and transported him are also agents of ABM, CBRE, and Lowe because they are members of the San Diego Downtown Partnership ("Downtown Partnership"). Id. ¶¶ 78-81. To participate in the Downtown Partnership, Lowe, CBRE, and/or ABM executed an agreement entitled "Letter of Agency" and filed it with the SDPD and/or the city. Lutz "alleges, on information and belief, that the Letter of Agency authorizes SDPD to act on behalf of Defendants LOWE, CBRE, and/or ABM and subject to said Defendants' control on the grounds of the Civic Center Plaza office building." Id. ¶ 83. Lutz further claims that "[s]aid letter empowers SDPD to bind the principal, Defendants LOWE, CBRE, and ABM, in a citizen's arrest and attendant responsibilities and liabilities." Id. ¶ 84.

| | |
|---|---|
| 1 | Lutz is now asserting ten causes of action: (1) unlawful seizure, arrest, |
| 2 | detention, and imprisonment under 42 U.S.C. § 1983 against Lessa; (2) unlawful |
| 3 | retaliation under 42 U.S.C. § 1983 against Lessa; (3) excessive force under |
| 4 | 42 U.S.C. § 1983 against Lessa; (4) <u>Monell</u> claim under 42 U.S.C. § 1983 against |
| 5 | the City, Landsdowne, and Long; (5) failure to train under 42 U.S.C. § 1983 |
| 6 | against the City, Landsdowne, and Long; (6) violation of the California Civil |
| 7 | Rights Act ("Bane Act") (California Civil Code §§ 52 and 52.1) against all |
| 8 | Defendants; (7) false imprisonment against Rousselle, Lowe, CBRE, ABM, Lessa, |
| 9 | and the City; (8) battery against Rousselle, Lowe, CBRE, ABM, Lessa, and the |
| 10 | City; (9) negligence against all Defendants; and (10) declaratory and injunctive |
| 11 | relief against the City, Lowe, CBRE, and ABM. In sum, Lutz only brought five of |
| 12 | his ten claims against CBRE: (1) violation of the Bane Act; (2) false |
| 13 | imprisonment; (3) battery; (4) negligence for breaching California Civil Code |
| 14 | §1714; and (5) declaratory and injunctive relief. Lutz requests general and special |
| 15 | compensatory damages, presumed damages, and nominal damages, past and |
| 16 | future medical expenses (to be determined by the trier of fact), three times the |
| 17 | actual damages, a civil penalty of $25,000 for each violation the Bane Act, and |
| 18 | reasonable attorney's fees. Only those claims Lutz asserted against CBRE are |
| 19 | discussed herein. |
| 20 | **II.    LEGAL STANDARD** |
| 21 | A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the |
| 22 | pleadings. See <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978). In |
| 23 | evaluating the motion, the court must construe the pleadings in the light most |
| 24 | favorable to the non-moving party, accepting as true all material allegations in the |
| 25 | complaint and any reasonable inferences drawn therefrom. See, e.g., <u>Broam v.</u> |

Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While a Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant Rule 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III. DISCUSSION

### A. Violation of Bane Act

A claim filed under the Bane Act requires a showing of "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998). "In pursuing relief for constitutional violations under Cal. Civ. Code § 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion." Venegas v. County of Los Angeles, 32 Cal. 4th 820, 843 (2004).

CBRE argues that Rousselle, who initiated the citizen's arrest, and the arresting police officer were not agents of CBRE. See MTD at 8. At best, Rousselle was an agent of ABM Security who, in any event, exceeded her scope of authority to act on behalf of CBRE. See id. Similarly, the police officer had no such authority from CBRE.

Lutz counters that his illegal arrest prevented him from participating in the political process by peacefully registering voters. See id. at 12. "Thus, the acts of CBRE's agents and employees, described in detail above, violated Plaintiff's

Fourth Amendment rights and directly infringed upon Plaintiff's First Amendment rights of freedom of speech and peaceable assembly. These coercive threats by CBRE's agents were made in both conduct and speech, and satisfy the pleading requirements for a Bane Act claim." Id.

Here, Lutz has adequately pled that his constitutional right to register voters under California's constitution was violated. This court also notes that other courts have found that the use of law enforcement authority to effectuate a stop, detention (including use of handcuffs), and search may constitute interference by "threat[], intimidation, or coercion" under the Bane Act. See Cole v. Doe, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005) (holding that the stop and detention of an individual without probable cause could violate the Bane Act); Cuviello v. City of Stockton, 2009 U.S. Dist. LEXIS 4896, *55-61 (E.D. Cal. 2009) (finding that a jury could reasonably find that police had violated the Bane Act claim by threatening to arrest plaintiffs as that was a coercive action that prevented plaintiffs from exercising their freedom of speech).

The only remaining issue is whether Lutz may assert a claim against CBRE for hiring ABM, which hired Rousselle. Under the doctrine of respondeat superior, an employer may be liable for torts its employee commits while acting within the scope of his employment. To determine whether an employee's acts were committed during the scope of employment includes (1) whether the act was either required by the employer or "incidental" to the employee's duties; and (2) whether the employee's misconduct was reasonably foreseeable by the employer (even if not "required" or "incidental"). See Yamaguchi v. Harnsmut, 106 Cal. App. 4th 472, 481-82 (2003); Alma W. v. Oakland Unified School Dist., 123 Cal. App. 3d 133, 139 (1981).

Although CBRE argues that Lutz's claim fails to meet this test, the court notes that Rousselle was a security officer who logically would have been able to engage in a citizen's arrest pursuant to the normal scope of her duties. At least one court has used the doctrine of respondeat superior to determine whether a security guard, the security guard company, and the property management company could be held liable for negligence and negligent hiring, retention, supervision, and training. See Rezek v. Tustin, 2012 U.S. Dist. LEXIS 164257 (C.D. Cal. 2012) (involving the assault of an individual by a security guard and two police officers). That court found that the security guard company and the property management company could be held liable under the doctrine of respondeat superior. See id. at *20 ("Given that [p]laintiff has adequately stated a claim against [the security guard] for violation of the Bane Act, [p]laintiff has also adequately stated a claim against [the security guard's] employers, given that employers can be vicariously liable for the acts of their employees.").

Plaintiff has properly alleged facts which may allow the jury to reasonably conclude that Rousselle's employer and the property management company, CBRE, may be held liable under the Bane Act pursuant to the doctrine of respondeat superior. CBRE's motion to dismiss Lutz's Bane Act claim is therefore denied.

**B. False Arrest and Imprisonment**

"The tort of false imprisonment is the nonconsensual, intentional confinement of a person without lawful privilege for an appreciable length of time, however short." City of Newport Beach v. Sasse, 9 Cal. App. 3d 803, 810 (1970). "False arrest is not a different tort but merely one way of committing the tort of false imprisonment." Hamburg v. Wal-Mart Stores, Inc., 116 Cal. App. 4th

497, 503 (2004) (citing Asgari v. City of Los Angeles,15 Cal.4th 744, 752 n. 3 (1997); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001)). "A cause of action for false imprisonment based on unlawful arrest is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages." Dragna v. White, 45 Cal. 2d 469, 471 (1955).

A person falsely arrested by a citizen may assert a false imprisonment claim against that citizen. See Kinney v. County of Contra Costa, 8 Cal. App. 3d 761, 769 (1970) ("It is noted that a person falsely arrested by a citizen has his remedy, as successfully pursued here, against the offending citizen."). Although a police officer may arrest a person without a warrant when he or she has probable cause to believe that the arrestee committed a misdemeanor in his or her presence, "a private person may only arrest someone for a misdemeanor when the offense actually has been committed or attempted in his presence." Tekle v. United States, 511 F.3d 839, 854 (9th Cir. 2007).

CBRE contends that the vague "conspiracy" allegation in the FAC has now morphed into vague "agency" allegations in the SAC. See MTD at 4. CBRE asserts that Lutz's allegations of agency are the same claims that allegedly put CBRE on notice that Lutz's arrest was the result of an agreement between agents or employees of CBRE and SDPD officers as in the FAC. See id.

Lutz counters that he has now identified who Rousselle is and clarified significant details regarding how Rousselle and Doe 10 were acting as the agents and/or employees of CBRE when they performed the arrest. See Opp. MTD at 5-6. Specifically, in the section addressing CBRE's liability, Lutz claims that he "connects CBRE to the chain of events that led to his false arrest: 'When Defendants ROUSSELLE and DOE 10 initiated/conducted the wrongful citizen's

arrest of Plaintiff, ROUSSELLE was the employee of ABM, Defendant DOE 10 was the employee of either CBRE or ABM, and both were the agents of LOWE and CBRE.'" Opp. MTD (citing SAC ¶ 61).

The court concludes that Lutz's false arrest claim has met the necessary pleading requirements because Lutz has described the agency relationship and explained how the alleged citizen's arrest was effected. CBRE is on notice that Rousselle was an employee of ABM, which was performing security on behalf of CBRE at the Civic Center Plaza building. As such, CBRE's motion to dismiss the false arrest and imprisonment claim is denied.

**C. Battery**

"A battery is a violation of an individual's interest in freedom from intentional unlawful, harmful or offensive unconsented contacts with his or her person." Rains v. Superior Court, 150 Cal. App. 3d 93, 938 (1984). A civil battery claim requires a showing that (1) the defendant intentionally did an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff. See Piedra v. Dugan, 123 Cal. App. 4th 1483, 1495 (2004); Cal. Penal Code § 242.

Under California law, a prima facie case for battery committed by a police officer during an arrest requires a plaintiff to prove that an officer "used unreasonable force against him to make a lawful arrest or detention." Saman v. Robbins, 173 F.3d 1150, 1157 (9th Cir. 2003). For example, the Ninth Circuit has held that pointing a gun at a child's head may constitute excessive force. See, e.g., Tekle v. United States, 511 F.3d 839, 847 (9th Cir. 2007) (citing Robinson v. Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002)) (concluding that pointing

several guns at an unarmed and cooperative eleven-year-old child constituted excessive force); see also Uganda Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1166-67 (N.D. Cal. 2009) (holding that a police officer using a "carotid hold" on an unarmed citizen who was not resisting the police officer constituted excessive force).

Lutz again asserts that CBRE and the other Defendants conspired to commit a battery against him. See Opp. MTD at 9. Lutz acknowledges that this legal theory is a question of first impression but argues that the court nevertheless should permit it to proceed with its claim. Lutz also argues that battery is implicit in any false arrest because battery is broadly defined to include any harmful or offensive touching.

Citing the court's prior order granting CBRE's motion to dismiss, CBRE counters that it had nothing to do with the placement of the handcuffs and any argument that CBRE is liable for excessive force in connection with the handcuffing process cannot be predicated on the deficient agency and/or conspiracy allegations. See MTD at 5. CBRE argues that, even if it made a proper citizen's arrest, it is not liable for the excessive force used by a law enforcement officer thereafter. See id.

The court concludes, at this juncture, that insufficient facts have been pled for a viable claim of battery against CBRE. Absent participation or direction by the citizen in the use of cuffs, or prior knowledge that in this particular instance the cuffing process would cause injury, the battery claim against CBRE is defective.

//

//

### D. Negligence for Breaching California Civil Code § 1714

California Civil Code § 1714 ("§ 1714") provides that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." The elements of a negligence claim are (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury. See Ladd v. County of San Mateo, 12 Cal. 4th 913, 918 (1996).

Lutz's negligence claim alleges that the agents and/or employees of CBRE "should reasonably have anticipated that some individual might attempt to use the privately owned portion of the Plaza for peaceful political activities." FAC ¶ 195. Lutz further argues that CBRE had a duty to train its agents and employees regarding the ability of individuals to register voters and engage in other protected activities and that CBRE was negligent for failing to comply with this duty. See id. To support his claim, Lutz notes that the plain language of San Diego Municipal Code ("SDMC") § 52.80.01(c) provides an exception to the trespassing statute for individuals who, like Plaintiff, are engaged in peaceful political activities. See Opp. MTD at 11.

CBRE contends that it did not owe Lutz a legal duty to use due care because Lutz has not alleged that CBRE knew that ABM, Rousselle, or any other ABM employee "posed a risk of harm or would be likely to hurt others in performing security for the building." MTD at 7. CBRE further argues that Lutz has not pled any facts "that CBRE hired ABM Security [or] that CBRE failed to take care in selecting ABM Security . . . ." Reply MTD at 4.

Lutz counters that "CBRE was the manager of the Civic Center Plaza office building and controlled and supervised the conduct of ROUSSELLE and all other employees of ABM Security while said individuals were working on the premises." Opp. MTD at 11. Lutz further explains that CBRE misunderstands its claim, which is that CBRE failed to train and control its employees, not that it negligently hired its employees. See Opp. MTD at 12.

The court generally agrees that § 1714 creates a duty on the part of CBRE to maintain and manage the Civic Center Plaza without negligently causing injury to another. The court notes that CBRE's stated grounds for dismissal ignores Lutz's claim that it failed to train its employees and agents regarding the ability of citizens to register voters on private property. Having stated no proper grounds for dismissal, the court denies CBRE's motion to dismiss Lutz's negligence claim.

### E. Declaratory and Injunctive Relief

Lutz first expresses his concern that he may be arrested for trespassing again if he attempts to register voters. Lutz also claims that he is concerned that he will again be denied the liberty interest codified in California Penal Code §853.6[1] and will be detained until his arraignment unless and until he posts a monetary bond. See FAC ¶ 209. Lutz explains that he is seeking an injunction to "prevent[] individuals engaged in peaceful political activity (including, but not limited to, voter registration) on the private portion of the Civic Center Plaza owned by Defendant LOWE (and managed by Defendant CBRE and for which security is provided by Defendant ABM) from being arrested and/or falsely

---

[1] Permitting a law enforcement officer to release a person suspected of violating a misdemeanor if he signs a written promise to appear before a magistrate judge on a specified date.

imprisoned by agents or employees of Defendants CITY, LOWE, CBRE, ABM, and/or DOES 31-60." See id. Lutz also seeks a declaration of rights with respect to this controversy. See id. ¶ 211.

CBRE argues that Lutz's injunctive and declaratory relief claims are based on past wrongs and are "wholly derivative" of the substantive claims he has asserted. See MTD at 11. However, Lutz emphasizes that he is seeking declaratory and injunctive relief so that he and other individuals may engage in peaceful political activity, including voter registration, on the private portion of Civic Center Plaza. See Opp. MTD 13-14.

"The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject." City of Cotati v. Cashman, 29 Cal. 4th 69, 79 (2002) (quotation omitted). Declaratory relief is prospective, operating to put controversies at rest before the wrongs must be redressed and not merely for the redress of past wrongs. See Babb v. Superior Court, 3 Cal. 3d 841, 848 (1971). To ascertain whether declaratory relief is appropriate, a court must determine: "(1) whether the dispute is sufficiently concrete that declaratory relief is appropriate; and (2) whether withholding judicial consideration will result in the parties suffering hardship." Stonehouse Homes v. City of Sierra Madre, 167 Cal. App. 4th 531, 540 (2008) (citations omitted).

Here, Lutz has indicated that he and others may seek to engage in political activities in the future, including the registration of voters. The ability of individuals to engage in such political activity on private property would be appropriate for declaratory relief if sought prior to engaging in that activity. Here, this declaratory relief does not clarify the parties' interests or relieve uncertainty

beyond the other claims Lutz has asserted and withholding judicial consideration would not result in hardship.

However, the court notes that injunctive relief is a remedy, not a cause of action. See, e.g., Roberts v. Los Angeles County Bar Assn., 105 Cal. App. 4th 604, 618 (2003) (citing McDowell v. Watson, 59 Cal. App. 4th 1155, 1159 (1997) (noting plaintiff's non-opposition to argument that cause of action for injunction was improper because an injunction is a remedy rather than a cause of action). As injunctive relief is a type of relief, CBRE's motion is granted without leave to amend as to this "claim." This decision does not affect the availability of this remedy if Plaintiff is successful on valid causes of action.

## IV. CONCLUSION

For the aforementioned reasons, the court grants CBRE's motion to dismiss the battery, declaratory relief, and injunctive relief claims without leave to amend. Lutz, however, may still seek injunctive relief as a remedy if he is able to succeed on other claims and establishes that injunctive relief is appropriate and warranted. The court denies CBRE's motion to dismiss Lutz's Bane Act, false arrest and imprisonment, and negligence claims.

**IT IS SO ORDERED.**

DATED: August 13, 2013

Jeffrey T. Miller
United States District Judge

16